38 C.C.P.A. (Patents)

### In re SULLIVAN.

### No. 5771.

United States Court of Customs and Patent Appeals.

April 3, 1951.

Bacon & Thomas, Washington, D. C. (Francis D. Thomas, Harry W. F. Glemser, and Wm. Wallace Cochran, all of Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

GARRETT, Chief Judge.

Appellant here seeks review and reversal of the decision of the Board of Appeals of the United States Patent Office affirming the denial by the Primary Examiner, hereinafter referred to as the examiner, of two of the claims of appellant's application for patent relating to alleged "new and useful improvements in the design and construction of cargo carrying airplanes." The denial of the claims is based upon features of prior art disclosed in three patents.

Nine claims were allowed, eight by the examiner and one by the board. The two on appeal, numbered respectively 19 and 39, read:

"19. In an airplane and detachable cargo compartment combination, wherein the airplane is self contained and flyable with or without the cargo compartment, means for attaching said cargo compartment to the airplane with the center of gravity of said cargo compartment in substantially vertical alignment with the aerodynamic center of lift of said airplane; landing gear for said combination including wheel means on both said airplane and cargo compartment serving as landing wheels; and auxiliary wheel means operatively associated with the air-

plane and the cargo compartment, respectively, cooperable with said landing wheels to provide independent taxiing of the airplane and roadability of the cargo compartment when said cargo compartment is detached from said airplane.

"39. In an airplane and detachable cargo compartment combination; means for attaching said cargo compartment to said airplane with the center of gravity of said cargo compartment in substantially vertical alignment with the aerodynamic center of lift of said airplane; a main landing gear for said combination of airplane and cargo compartment, said landing gear being disposed in a common horizontal plane and arranged to support said cargo compartment in a substantially horizontal attitude when said airplane is on the ground; and auxiliary wheel means associated with said combination of airplane and cargo compartment cooperable with said landing gear to provide independent taxiing of the airplane and independent roadability of the cargo compartment when said cargo compartment is detached from said airplane."

Four claims were involved in the appeal to the board and certain of the references listed in its decision were cited in connection with claims not included in the appeal to us. They require no notice here. Those cited in connection with the claims brought before us are:

Booth et al. (a
  British patent), 139,295, Mar. 4, 1920,
Gray, 1,716,439, June 11, 1929,
Brogelli, 1,797,713, Mar. 24, 1931.

The utility and convenience of a device of the kind here involved is concisely recited in the brief for appellant as follows: "Appellant's invention is a cargo carrying airplane in which the cargo compartment is made detachable from the airplane body to facilitate the preloading of cargo compartments and their interchange. The arrangement is such that the airplane is airworthy and groundworthy whether or not the cargo compartment is attached thereto. The advantage of such an arrangement is obvious. The cargo compartment may be loaded previous to the arrival of the plane, attached to the plane, delivered to its destination, detached and then unloaded. The airplane itself may be used for other purposes while loading and unloading of compartments is taking place. It may, for instance, be used to carry another pre-loaded compartment to its destination."

It is thought that appellant's structure may be visualized broadly from the description given in the brief of the Solicitor for the Patent Office, the pertinent portion of which, with the numerals designating elements named in the specification and pages of the record deleted, reads:

" * * * an airplane to the bottom of which a cargo compartment is detachably secured so that the center of gravity of the cargo compartment is in substantially vertical alignment with the aerodynamic center of lift of the airplane.

"The airplane has main landing wheels which cooperate with a pivoted nose wheel carried by the cargo compartment to provide landing gear for the combination of airplane and cargo compartment. When the cargo compartment is detached from the airplane, auxiliary landing wheels on the airplane provide independent taxiing of the airplane. Likewise, in the detached condition, wheels or dolly used with the cargo compartment provide independent roadability of the cargo compartment."

A more detailed description is found in the brief filed on behalf of appellant wherein it is said, in substance, that the airplane, as appears from the drawings, is a high-wing, twin boom type having two spaced main landing wheels; that the detachable cargo compartment has, adjacent its upper surface, two rows of pins which are spaced along the length of the compartment; that by means of any two of these pins lying in the same transverse plane, the compartment is attached to the body of the airplane by shackles; that this arrangement constitutes the only means connecting the compartment with the airplane; that the reason for providing a plurality of longitudinally spaced pins is to permit the selection of the one which lies substantially in a vertical plane directly above the center of gravity of the loaded compartment for connection with a shackle; that because of

the different kinds of loads which may make up the cargo, the longitudinal position of the center of gravity thereof, when loaded, will vary; that when the particular pins above the center of gravity have been ascertained, they are fastened to the airplane by the shackles which are so located that the load is substantially balanced relative to the aerodynamic center of lift of the airplane when the selected pins are engaged with the shackles; that the detachable cargo compartment carries front wheels, or may have auxiliary rear wheels by means of which after being separated from the airplane it may be hauled or towed away by truck; and that the front wheel means of the compartment also may act in conjunction with the wheels of the airplane when a landing or a take-off is being made.

It is stated further that the airplane body is equipped with auxiliary landing and take-off wheels carried by arms pivoted to the body and when those auxiliary wheels are advanced the airplane can take off, land, and taxi on the main and auxiliary wheels, independently of the cargo compartment.

In the brief for appellant before us some argument is presented indicating reliance for patentability upon the feature of locating the shackles so that the load in the cargo compartment is substantially balanced as immediately above described, but the action in the Patent Office as to this feature does not appear to have been specifically covered in the reasons of appeal and during the oral argument before us the contention in that respect was abandoned. The examiner, in fact, had pointed out the presence of this feature in the British patent.

So, in the final analysis, appellant's reliance is upon the features of (1) the auxiliary wheel means and (2) the adaptability of the front wheel of the cargo compartment for use in conjunction with the wheels on the airplane when a landing or take-off is made—features which are embodied in both claims and expressed in claim 19 in the following phraseology:

"* * * landing gear for said combination including wheel means on both said airplane and cargo compartment serving as landing wheels; and auxiliary wheel means operatively associated with the airplane and the cargo compartment, respectively, cooperable with said landing wheels * * *."

It will be observed from the claims that the auxiliary wheels are designed also to serve (1) in providing independent taxiing of the plane and (2) in providing "roadability" of the cargo compartment when it is detached from the plane.

Apparently the British patent to Booth et al. was regarded by the tribunals of the Patent Office as the principal reference. It shows an airplane having a boat detachably mounted below the single fuselage of the plane, "especially adapted for the purpose of carrying mails, merchandise and the like." The landing gear of the seaplane consists of pontoons, which are not numbered in the drawings but which, as we understand the structural arrangement, are carried by the aircraft which has no landing wheels, or any other device except such pontoons, for use in landing. The claims of this patent are limited to the cargo carrying structure—that is, the boat—and no feature of that structure is connected with the airplane for cooperation in the movement or landing of the latter. The claims are combination claims but, unlike those at bar, they do not include the plane in the combination.

The patent to Gray relates to an undercarriage for airplanes in the form of a tricycle landing gear having various features. There is no reference in the patent to a cargo compartment detachable from the plane, and the examiner appears to have cited it with the holding, as quoted by the board in its approval, that: "No unexpected or unobvious result would be involved in substituting the well known tricycle landing (wheeled) gear, an example of which is shown by Gray, for the reference landing (float) gear [of Booth et al.]. Mere conversion from a water landing aircraft to an aircraft for landing [on] or take-off from land is involved."

We hereinafter comment upon this holding.

The Brogelli patent relates to aeroplanes, seemingly designed for landing on both water and land, which transport different kinds of large detachable bodies. In one figure of the drawings the detachable body is a submarine; in another, a surface vessel in the form of a ship or boat; and in another, a land vehicle of the automotive type, such as a bus. The plane carries relatively small detachable boats which serve as pontoons and constitute its landing gear when landing on water. For landing on land it is supplied with two wheels which are normally retracted upward to a position above the pontoon boats but may be lowered to a position below such boats so that they will contact the ground, when a ground landing is made.

It is said in the brief for appellant that the showing in the figure of the drawings which depicts those two wheels strongly suggests that Brogelli's plane would be inoperative for ground landing. This suggestion apparently grows out of the fact that when the wheels are lowered from their retracted position they are disposed below the body which is being transported by the plane.

We do not undertake to pass upon the question of operativeness as suggested, but we do not find ourselves in agreement with the idea advanced by the respective tribunals of the Patent Office that equipping the Brogelli's *plane* with the two wheels referred to would suggest equipping the British *cargo carrier* with a wheel which would serve as a landing and take-off aid.

The seaplane of the British patent, of course, was not designed for ground landing and, so far as we can determine, it has no gear for such a landing. The only thing it has in common with the structure of appellant is a cargo carrier. Its cargo carrier does not disclose any equipment which aids its landing, so far as we can see, nor is there any equipment attached to any one of the bodies disclosed as being transported by the airplane of Brogelli which purports to constitute any part of its equipment for landing on either land or sea.

It is true that Brogelli discloses as one of the bodies transported by his airplane what looks like a passenger bus of large dimensions, and the bus is equipped with wheels, but the bus wheels, while supplying "roadability" to the vehicle, do not function as a part of Brogelli's landing gear, nor are we able to discern how they might be arranged to function as such.

So far as the tricycle feature of the Gray patent is concerned it possibly might be fitted to the cargo carrier of the British patent so that it would serve as an undercarriage for the carrier, that is, the boat, if such an arrangement were desired, but it would not become thereby an undercarriage for the plane itself as distinguished from the cargo carrier. It, of course, would not perform any function in landing on water.

We have here the question which so frequently arises as to whether modifications of individual features found in prior art (which modifications are necessary to meet a newly suggested combination) represent invention rather than mere mechanical skill. In considering that question we must remember that when one is confronted with a newly suggested combination and prior art disclosures one almost unconsciously may be led to regard the necessary modifications as requiring less of thought and effort than actually is required.

That appellant has made an invention is evidenced by the numerous claims which have been allowed below, and it seems to have value. We are of opinion that the features relied upon by appellant represent something more than mechanical skill and that they should be allowed along with those approved as patentable by the tribunals of the Patent Office.

So, the decision of the Board of Appeals affirming the examiner's rejection of the two claims on appeal is reversed.

Reversed.